## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

CATHY S. COLLINS,
Administratrix of the Estate of
ADAM RAY COLLINS, deceased,

    Plaintiff,

v.            CIVIL ACTION NO. 3:22-0051

SAMSUNG MACHINE TOOLS COMPANY
n/k/a SMEC CO. LTD.,
DYNAMIC INTL OF WISCONSIN, INC., and
SMEC AMERICA CORP.,

    Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant SMEC America Corp.'s Motion to Dismiss for Failure to State a Claim. ECF No. 11. Defendant argues that this Court lacks personal jurisdiction and that Plaintiff has not sufficiently alleged a claim upon which relief can be granted. For the following reasons, the Court **HOLDS IN ABEYANCE** Defendant's Motion with respect to personal jurisdiction and **DENIES** Defendant's Motion as to the 12(b)(6) argument. ECF No. 11.

### BACKGROUND

This case is brought by Plaintiff Cathy Collins, the Administratrix of the Estate of Adam Ray Collins. Adam Ray Collins died on February 3, 2020, due to injuries that he sustained while operating a CNC Lathe Machine on January 30, 2020. While he was operating the machine, a cylinder-shaped metal product was ejected from the machine, breaking through the machine's viewing window and striking the decedent in the head. He sustained fatal crushing injuries to his

head.

The CNC Lathe Machine at issue here was distributed by Defendant Dynamic, who is an agent of SMEC Co. Ltd. SMEC Co. Ltd. is a foreign corporation that manufactured, produced, designed, marketed, distributed, supplied, and sold the CNC Lathe Machine. Defendant SMEC America is a New Jersey Corporation, which is a wholly owned subsidiary of Defendant SMEC established in 2018 to provide factory support to the United States distributor network and customers of Defendant SMEC Co. Ltd.

Plaintiff alleges that Defendant SMEC Co. Ltd. and Defendant Dynamic engaged in marketing and advertising efforts to serve the United States market, including West Virginia. The marketing was designed to and did reach West Virginia, and the CNC Lathe Machine served a manufacturing market present in West Virginia. Plaintiff further alleges that the Court has personal jurisdiction over all Defendants based on the placement of their product into the stream of commerce consistent with the Due Process Clause, and that Plaintiff need not show additional conduct aimed specifically at West Virginia. Plaintiff asserts that the accident occurred at the machine shop in Huntington, WV, and that the CNC Lathe Machine was transported into the stream of commerce to West Virginia, as anticipated by Defendants. Further, Plaintiff asserts that Defendants derived revenue directly and indirectly through the distribution of the product serving the manufacturing industry in West Virginia.

## STANDARD OF REVIEW

A court may dismiss claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The plaintiff bears the burden "ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). "Where, as here, the district court addresses the question of personal jurisdiction on the

basis of motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009) (citation omitted). "In considering whether the plaintiff has met this burden, the district court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (citation and quotation marks omitted).

A court can also dismiss a claim for failure to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that

Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

## DISCUSSION

Defendant asserts that the Court lacks personal jurisdiction and that Plaintiff has not sufficiently alleged a claim for which relief may be granted. The Court will address each argument.

1. <u>Personal Jurisdiction</u>

A federal court sitting in diversity "has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (citation omitted). "Because the West Virginia long-arm statute is coextensive with the full reach of due process," these questions merge into one inquiry. *In re Celotex Corp.*, 124 F.3d 619, 627–28 (4th Cir. 1997).

West Virginia's primary long-arm statute confers personal jurisdiction over a nonresident "who engages in any one of seven acts enumerated therein:"

1. Transacting any business in this State;
2. Contracting to supply services or things in this State;
3. Causing tortious injury by an act or omission in this State;
4. Causing tortious injury in this State by an act or omission outside this State if he or she regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this State;
5. Causing injury in this State to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume, or be affected by the goods in this State: Provided, [t]hat he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
6. Having an interest in, using or possessing real property in this State; or
7. Contracting to insure any person, property or risk located within this State at the time of contracting.

*State ex rel. Ford Motor Co. v. McGraw*, 237 W. Va. 573, 581 (W. Va. 2016) (citing W. Va. Code § 56-3-33(a)). West Virginia's second long-arm statute states that, for the purposes of asserting jurisdiction, a foreign company is "deemed to be transacting business in West Virginia if… [t]he corporation commits a tort, in whole or in part, in this State." *Id.* (citing W. Va. Code § 31D-15-1501(d)).

Here, Plaintiff has alleged that Defendant SMEC America was negligent in failing to adequately label, warn, or instruct with respect to the CNC Lathe Machine. Plaintiff specifically

states that Defendant SMEC America:

> "knew or should have known that the CNC and lathe machines manufactured by Defendant SMEC and distributed throughout the United States contained a significant product defect with regard to the integrity and safety of the viewing windows... Defendant SMEC America knew or through the exercise of minimal diligence should have known that the CNC lathe machines manufactured by Defendant SMEC and distributed throughout the United States did not comply with the industry standards in the United States for adequate warnings, labels and instructions with regard to the need to monitor, periodically inspect and replace the viewing windows on the CNC lathe machines."

*Compl.*, ECF No. 1 ¶¶ 73, 74. Further, Plaintiff asserts that Defendant SMEC America "knew or should have known that the absence of specific warnings… substantially increased the risk of harm to consumers/users in the United States" and that SMEC America, "as the United States agent/alter ego of Defendant SMEC had a duty to issue warnings with regard to dangers which are discovered or which reasonably should have been discovered after the product is delivered into the stream of commerce." *Id.* ¶¶ 75, 76. Plaintiff asserts that Defendant SMEC America breached this duty, which proximately caused the injuries at issue here. *Id.* ¶¶ 78, 79. The alleged commission of this tort satisfies the West Virginia long-arm statute.

The Court must next determine whether the exercise of personal jurisdiction over the Defendant would comport with the principles of due process. "A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). A defendant's contacts can establish general or specific jurisdiction. *Perdue Foods*, 814 F.3d at 189. Only specific jurisdiction is at issue here.

The Fourth Circuit applies a three-prong test to determine whether specific jurisdiction

over a nonresident defendant exists. *Universal Leather*, 773 F.3d at 559. Courts examine:

> (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable.

*Id.* The "touchstone" of this analysis is whether the defendant "engaged in some activity purposefully directed toward the forum state." *In re Celotex Corp.*, 124 F.3d at 628 (citation omitted). A court need not consider the second and third prongs if the plaintiff does not make a prima facie showing that the defendant purposefully availed itself of the privilege of conducting business in the forum state. *See Consulting Eng'rs*, 561 F.3d at 278.

To determine whether a defendant purposefully availed itself of the privilege of conducting activities in the forum state, courts consider many factors, including: (1) "whether the defendant maintains offices or agents in the forum state"; (2) "whether the defendant owns property in the forum state"; (3) "whether the defendant reached into the forum state to solicit or initiate business"; (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state"; (5) "whether the parties contractually agreed that the law of the forum state would govern disputes"; (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship"; (7) "the nature, quality, and extent of the parties' communications about the business being transacted"; and (8) "whether the performance of contractual duties was to occur within the forum." *Consulting Eng'rs*, 561 F.3d at 278.

Plaintiff argues that the Court should permit discovery on the issue of personal jurisdiction to discover facts related to the relationship between Defendant SMEC America and SMEC Co. Ltd. and to determine whether SMEC America had sufficient minimum contacts with West Virginia. "A federal district court uncertain about its personal jurisdiction over a defendant may, in its discretion, grant discovery for the limited purpose of determining whether exercising

personal jurisdiction is proper." *Estate of Alford v. Fuji Heavy Indus., Ltd.*, No. 3:15-16449, 2016 WL 756489, at *1 (S.D.W. Va. Feb. 25, 2016) (citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)). "'If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained.'" *Estate of Alford*, 2016 WL 756489, at *1 (quoting; *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). However, "the decision of whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court," and "where ... the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction," the court is within its discretion to deny jurisdictional discovery. *Base Metal Trading v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002). Thus, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst*, 334 F.3d at 402.

Construing all facts in Plaintiff's favor, her Complaint plausibly alleges that this Court may have specific jurisdiction over Defendant SMEC America. Plaintiff asserts that SMEC Co. Ltd. delivered its product, the CNC Lathe Machine, into the stream of commerce in 2014 in the United States through its agent and distributor Dynamic. Ultimately, the CNC Lathe Machine at issue was purchased and transported in the stream of commerce in 2019 to the machine shop in Huntington, West Virginia where Mr. Collins' fatal accident occurred. After the subject CNC Lathe Machine was placed into the stream of commerce, SMEC America was formed in order to provide factory support to the United States distributor network and customers of SMEC Co. Ltd. Plaintiff asserts that Defendant SMEC America is indeed the American agent and alter ego of SMEC Co. Ltd. with

respect to managing customers and the distributor network in the United States.

Plaintiff alleges that, prior to the accident which caused the fatal injuries giving rise to this case, Defendant SMEC America knew or should have known that the CNC Lathe Machines distributed throughout the United States contained a significant product defect with regard to the integrity and safety of the viewing windows. Further, Plaintiff asserts that Defendant SMEC America knew or should have known that the machines did not comply with industry standards in the United States for adequate warnings, labels, and instructions, which substantially increased the risk of harm to customers and users. This, Plaintiff argues, gave rise to a duty to issue warnings with regard to the safety of the viewing windows on the CNC Lathe Machines. Thus, Defendant SMEC America breached this duty by failing to warn of the dangers associated with the viewing window, which proximately caused the injuries suffered by Mr. Collins.

Plaintiff's allegations here rise above mere legal conclusions. *See Gilley v. C.H. Robinson Worldwide, Inc.*, No. 1:18-00536, 2020 WL 1272116, *7 (S.D.W. Va. Mar. 16, 2020) (discussing how plaintiffs merely asserted that defendant had sufficient contacts with West Virginia without providing any concrete examples of the defendant's contact with the state); *Farrar v. Cessna Aircraft Co.,* No. 2:18-cv-00461, 2018 WL 5891751, *4 (S.D.W. Va. Nov. 9, 2018) (discussing how plaintiffs offered concrete examples of defendants' contacts with West Virginia). Plaintiff specifically alleges that Defendant SMEC America is the American agent and alter ego of SMEC Co. Ltd. and is responsible for managing its customers and distributor network in the United States. SMEC Co. Ltd. targeted the whole of the United States when it put the CNC Lathe Machine into the stream of commerce. According to Plaintiff, because SMEC Co. Ltd. dispatched Defendant SMEC America to assume responsibility for supporting the company's business in the United States, SMEC America had a duty to warn regarding the defect in the CNC Lathe Machines. These

allegations are more than bare assertions regarding the possibility of sufficient minimum contacts with West Virginia. The Court will allow Plaintiff to conduct a limited jurisdictional discovery for a period of 120 days to develop the record on Defendant SMEC America's contacts with West Virginia and its relationship to SMEC Co. Ltd.

    2. <u>Failure to State a Claim</u>

Defendant SMEC argues that Plaintiff has not sufficiently alleged a claim upon which relief may be granted. In reviewing this argument, the Court construes the facts in the light most favorably to Plaintiff. As the Court has already discussed, Plaintiff here have alleged a plausible claim; she alleged that Defendant SMEC America is the agent of SMEC Co. Ltd., and that a duty to warn existing SMEC customers regarding the defects in the CNC Lathe Machines arose, which SMEC America breached, causing the injuries at issue. The Court finds that the Complaint is plausible on its face. To the extent that Defendant seeks to dismiss the Complaint based on Rule 12(b)(6), this Motion is **DENIED**.

**CONCLUSION**

For the foregoing reasons, the Court **HOLDS IN ABEYANCE** Defendant's Motion for a period of 120 days and **DENIES** the Motion Defendant's 12(b)(6) argument. ECF No. 11. The Court allows Plaintiff the opportunity to conduct jurisdictional discovery on Defendant SMEC America's relationship with SMEC Co. Ltd. and its contacts with West Virginia.

The Court **DIRECTS** the Clerk to send a copy of this Order and Notice to counsel of record and any unrepresented parties.

            ENTER:      June 13, 2022

           ROBERT C. CHAMBERS
           UNITED STATES DISTRICT JUDGE